# CIRCUIT COURT OF MADISON COUNTY

Tina Marie Federico

v.

Division of Child Support
Enforcement

March 3, 2006

Case No. CH05-3488

BY JUDGE DANIEL R. BOUTON

I have now reviewed the written arguments submitted by both parties in connection with the above referenced case. For the reasons set forth below, the Motion to Set Aside the Juvenile and Domestic Relations District Court Order of the mother is denied. The case shall be dismissed from the docket of the court.

*Procedural History*

On June 11, 2001, Tina Federico was ordered by the Madison County Juvenile and Domestic Relations District Court to pay support in a specific amount for her minor child. The child support was payable to the father, who had custody of the child at the time that the support was originally ordered. Subsequently, a show cause summons was issued against the mother in connection with her child support obligation. On September 9, 2005, the juvenile court found the mother in contempt, imposed a period of incarceration, and established a child support arrearage. The mother appealed the contempt and arrearage order to the Madison County Circuit Court. The juvenile court then set an appeal bond, as mandated by Section 16.1-296(H) of

the Code of Virginia. The appeal was dismissed due to the failure of the mother to post the required appeal bond.

Ms. Federico then filed the "motion" that is before the court. In essence, the motion asserts that on September 9, 2005, the Madison County Juvenile and Domestic Relations District Court had no subject matter jurisdiction to adjudicate the show cause summons that led to the finding of contempt, the imposition of the period of incarceration, and the establishment of the arrearage. Even though it is undisputed that the juvenile court had proper jurisdiction to determine the original support obligation, the mother asserts that the subsequent orders of the Albemarle County Circuit Court divested the juvenile court of its authority to enforce its original support order.

The motion before the court is not based on any appeal from the juvenile court. Furthermore, the parents of the child were never married; thus, the motion does not arise from any divorce proceedings between them. The motion constitutes an independent proceeding that was filed as a separate cause in the Madison County Circuit Court. The mother maintains that the filing of the motion gives the Madison County Circuit Court the authority at this time to rule on whether the juvenile court had subject matter jurisdiction on September 9, 2005, when it tried the issues raised by the show cause summons.

The court heard oral argument on the motion and directed the parties to submit written arguments in support of their respective positions.

*Discussion of the Issues*

*Whether the Circuit Court Has Jurisdiction*
*to Consider the Mother's Motion*

The mother correctly states that the lack of subject matter jurisdiction can be raised at any time before any court in which a case is pending. Here, however, the mother is asking one court (the circuit court) to find that another court (the juvenile court) did not have subject matter jurisdiction to act when it enforced a valid support order. Thus, the issue is not simply whether a challenge to subject matter jurisdiction can be raised; rather, it is whether the Madison County Circuit Court is the proper forum to raise the challenge.

On this issue, it should first be noted that the court disagrees with the mother's interpretation of the cases cited by her. For one thing, subject matter jurisdiction is granted to the circuit court only by statute or by constitution. *Parker v. Commonwealth*, 42 Va. App. 358, 592 S.E.2d 358 (2004);

*Humphreys v. Commonwealth*, 186 Va. 765, 43 S.E.2d 890 (1947). The court is aware of no statute or constitutional provision that gives the circuit court the authority to hear and rule on whether the juvenile court had subject matter jurisdiction when it found the mother in contempt in connection with this case. If the court adopted the reasoning of the mother, it would mean that any litigant dissatisfied with a juvenile court ruling could file a simple motion in the circuit court challenging the juvenile court's subject matter jurisdiction in the case. It would also mean that such a motion could actually be filed in any circuit court. Moreover, regardless of whether any such motion had merit, the theory espoused by the mother in the present case would require the circuit court to hear and decide such a motion. In effect, the mother asserts that the circuit court has the inherent power to decide whether the juvenile court has subject matter jurisdiction to enforce its support orders. Based on the absence of a statute or constitutional provision that confers such power on the circuit court, this argument is rejected.

Two other points must be stressed by the court in connection with this issue. First, the mother's argument regarding the statutory authority of circuit courts to determine questions of custody and support has no relevance and does not support her position that the circuit court has the authority to rule on the question of the juvenile court's subject matter jurisdiction. As noted above, nowhere in any of the statutes that give the circuit court the power to resolve custody and support disputes is there any language that authorizes the circuit court to hear and decide an independent challenge to the subject matter jurisdiction of the juvenile court. This case is not before the Madison County Circuit Court on appeal from a district court, nor is it based on a divorce proceeding between the parties. It is before the court based on the mother's separately filed motion. There is no statute that even authorizes the filing of a motion such as the one that is before the court.

The second point noted by the court is that the holding in *Mahoney v. Mahoney*, 34 Va. App. 63, 537 S.E.2d 626 (2000), almost completely undercuts the mother's position. There, the Court of Appeals stated clearly that, when a bond is not posted in an arrearage case appealed from the juvenile court, the circuit court has no jurisdiction to try the appeal. Most important, *Mahoney* specifically holds that, if the bond is not posted, the circuit court has no authority to act, even if the only challenge raised is to the subject matter jurisdiction of the juvenile court. That was the precise issue before the court in *Mahoney*. The court ruled that, if the bond mandated by the statute is not properly posted, then the circuit court has no jurisdiction to rule on any issue raised by the appeal.

*Mahoney* is extremely important to the court's ruling because the opinion confirms that the circuit court's jurisdiction over any aspect of a juvenile court case involving support arrearages derives only from a properly perfected appeal. Only on appeal can the circuit court conduct a trial *de novo* and only then can the circuit court decide any issue raised in the juvenile court, including the question of subject matter jurisdiction. On this point, the *Mahoney* court said: "It follows that, because no case or judgment exists in the lower court and because the circuit court, upon appeal, acts as the tribunal of original jurisdiction, it must address and dispose of all issues raised by the petitioner in the lower court. . . . Specifically, the circuit court must decide both the issue of jurisdiction and the issue of arrearages, because no judgment on arrearages exists once the matter is appealed from the lower tribunal." *Id.*, at p. 67 (citations omitted).

The mother's argument here directly contradicts the mandate of *Mahoney*. If the court accepted the position taken by the mother, it would mean that an independent action in the circuit court could be filed at any time to challenge the subject matter jurisdiction of the juvenile court to enforce its support orders. It would make no difference whether an appeal bond had been properly posted; indeed, the rationale relied on by the mother is such that it would not even matter whether an appeal has actually been noted. This interpretation of the law would render meaningless the *Mahoney* court's analysis and discussion of how the circuit court only acquires jurisdiction to rule on the issue of the juvenile court's subject matter jurisdiction in cases that are properly appealed.

As a result of the above, the court concludes that it does not have jurisdiction to rule on the motion.

### *Whether the Juvenile Court Lacked Subject Matter Jurisdiction*

The mother's argument on this point places great emphasis on § 16.1-244 of the Code of Virginia. However, the court disagrees with the manner in which the mother construes the statute. There are several reasons why the mother's interpretation of the statute is misplaced.

To begin with, there are no provisions in the statute that directly support the position taken by the mother. Nothing can be found in the statute that places any specific restrictions on the continuing authority of the juvenile court to enforce its valid support orders. Nowhere does the statute define, limit, or describe the power of the juvenile court to enforce support orders that have been properly entered. As Ms. Cangin persuasively argues in her

memorandum, Virginia's statutory scheme explicitly confers on the juvenile courts the authority to adjudicate the question of child support. Unless the juvenile court is divested of such jurisdiction, its authority to enforce any of its support orders remains in place. Therefore, since no specific language can be found in § 16.1-244 that divests the Madison County Juvenile and Domestic Relations District Court of its power to enforce the support order of June 11, 2001, the mother must point to a number of isolated clauses in the statute to support her position.

First, the mother relies heavily on the following portion of the statutory language: "Nothing in this section . . . shall deprive the juvenile and domestic relations district courts of the jurisdiction to enforce its valid orders prior to the entry of a conflicting order of any circuit court for any period during which the order was in effect. . . ." In the court's view, however, this provision does not have the broad, expansive meaning attributed to it by the mother. Rather, this provision must be construed to mean that the juvenile court is deprived of its jurisdiction to enforce an order only when the circuit court enters an order that is in direct conflict with a juvenile court order that covers the same period of time. For example, if the juvenile court attempted to enforce an order of support that applied for the same period of time during which the circuit court had already entered a conflicting order of support, then the authority of the circuit court would govern; the juvenile court in such a case would be deprived of its jurisdiction. Here, however, the circuit court orders relied on by the petitioner did not include any support provisions that applied during the period of time covered by the juvenile court support order. In enforcing its valid order, the juvenile court in this case was not exercising jurisdiction in the face of a conflicting circuit court order that had already been entered. Therefore, under the terms of the statute, the juvenile court was never divested of its jurisdiction to enforce the support order.

It should also be stressed that the court's interpretation of this language is consistent with a comprehensive reading of all of the provisions of the statute. For one thing, the statute was not promulgated for the sole purpose of defining when the juvenile court is divested of jurisdiction. Rather, the statute addresses concurrent jurisdiction and only makes limited reference to the concept of divestment. The purpose of the clause being relied on by the mother here is not to state directly or to emphasize when the juvenile court is divested of its authority to enforce its support orders. Rather, the clause was drafted in order to stress that the juvenile court is not deprived of its jurisdiction except in one limited instance, when there is a conflicting order of a circuit court. Moreover, the statutory language narrows even further the

extent to which the jurisdiction of the juvenile court is divested by stating when such very limited divestment occurs, prior to the entry of a conflicting circuit court order for the period of time during which such order was in effect. In short, the language found in the statute regarding the divestment of the juvenile court's jurisdiction should not be broadly construed and applied; rather, it should be read in an extremely narrow manner.

The court's interpretation of the statutory language is also consistent with the reasoning of *Martin v. Bales*, 7 Va. App. 141, 371 S.E.2d 823 (1988). *Martin* is not directly on point in that the factual circumstances presented by the case are distinguishable from those that are before the court in the present case. Also, *Martin* discussed the version of § 16.1-244 that applied before it was amended to include some of the provisions that are relevant in this case. Nevertheless, the reasoning relied upon by the court is consistent with the court's view of the statute. Specifically, in *Martin*, the Court of Appeals directly and explicitly affirmed the ongoing authority of district courts to enforce valid support orders. On this point, the court said that "orders of the district court requiring support . . . remain in full force and effect until reversed or modified by the court to which an appeal has been perfected. . . ." *Id.*, at p. 145-46.

The next reason that the mother's argument fails is that the Albemarle County Circuit Court order of September 2, 2003, in which temporary custody was awarded to the grandmother, is not "a conflicting order of any circuit court" as that term is defined by the statute. Furthermore, the order of March 28, 2005, in which permanent custody was awarded to the grandmother, is also not a conflicting order under the statute. The rulings of the Albemarle County Circuit Court resulted from a custody petition filed by the grandmother of the child; the ruling on temporary custody became effective when the order was entered on September 2, 2003, and the ruling on permanent custody went into effect based on the order of March 28, 2005. In contrast, the contempt and arrearage ruling of the Madison County Juvenile and Domestic Relations District Court resulted from a show cause summons that was issued to enforce a support order of the juvenile court. The original order of support fixed the mother's child support obligation based on the circumstances that existed as of June 11, 2001, the date that the order was entered. The contempt and arrearage finding covered the period of time during which the juvenile court order obligated the mother to pay child support.

In the court's view, there is no conflict among any of these orders. Specifically, the Albemarle County Circuit Court orders do not include any provisions that contradict the juvenile order of support during any period for

266

which the juvenile court's support order was in effect. Moreover, the circuit court orders do not contradict any of the findings that are contained in the juvenile court contempt and arrearage order of September 9, 2005. The mother was not even a party to the Albemarle County cases. Therefore, pursuant to § 16.1-244, the circuit court orders relied on by the mother here are not "conflicting" orders when compared to the juvenile court orders.

In addition, as argued by Ms. Cangin, there is another reason why the court rejects the mother's interpretation of the statute. Specifically, the mother's support obligation, set by the juvenile court in a separate proceeding, was not "incidental" to the custody dispute that was resolved by the Albemarle County Circuit Court. It is arguable that the support sought by the grandmother when she was awarded custody by the Albemarle County Circuit Court was incidental to the cause that was pending at that time in that court. However, it is not necessary for the court to resolve this question. Rather, the key point in this context is that the mother's valid, legally enforceable duty of support, which was properly ordered by the Madison County Juvenile and Domestic Relations District Court on June 11, 2001, was not incidental to the "causes pending" in Albemarle County. The mother's duty to support the child had nothing to do with the Albemarle case. It follows that the juvenile court order of September 9, 2005, in which the mother's support obligation was enforced, was also not "incidental" to the cause in the Albemarle County Circuit Court.

In light of the above discussion, the court finds that, if it has jurisdiction to rule in this case, the juvenile court had subject matter jurisdiction to enforce its support order of September 9, 2005. Thus, the mother's motion is denied, and the case is dismissed from the court's docket.